This is our final case for the day. This is 4-13-0847. People of the State of Illinois v. DeMarco Poole. For the appellant, we have Kelly Weston for counsel. And for athlete, we have Julia Wyckoff as counsel. Let's see, Ms. Weston, are you ready to proceed? May it please the Court, Counselors. Good afternoon. My name is Kelly Weston and on behalf of the State Appellate Defender, I represent the appellant, DeMarco Poole. Your Honors, this case represents the exact type of situation that the per se conflict rule was designed to prevent. DeMarco Poole's defense counsel contemporaneously represented both DeMarco in this case and Amber Graves in an unrelated case. Amber happened to be DeMarco's girlfriend but also happened to be a State's witness in DeMarco's case. DeMarco did not make a knowledgeable waiver and the Court was completely unaware of the conflict until well after the trial had ended. This was a per se conflict and in the interest of fairness, DeMarco should be granted a new trial. Mr. Foulkes must have been aware of it because he got this supposed waiver signed? Yes. This waiver that was undated was signed at some point by DeMarco and Amber. There was no, at the Court's motion, when the Court called the parties in on their own, on its own motion once it learned of the conflict, Mr. Foulkes said that it was obtained prior to trial. But he also seemed to think that some of the State's attorneys were aware of it, but the State's attorney in DeMarco's case and the Court… He certainly didn't want to trouble the Court with pointing himself to it before trial would begin. That's correct. It was uncontroverted that the Court had no idea of this conflict and the waiver hadn't been filed. I don't know if that was something that counsel just accidentally forgot to do or if he was just trying to cover his tracks after the fact, but it definitely was not filed prior to trial. Were you able to find any cases that talk about a requirement of the waiver being done in open court? Yes. I believe in People v. Thomas they touched on the fact that the Court needs to have admonished the defendant, because the Court is a neutral party, and they need to admonish the defendant in open court, because this is such an important right to waive. It needs to be done on the record in open court, make sure the defendant understands the real consequences with waiving conflict-free counsel. And another case, People v. Morales, that also discusses waivers. Counsel, let me ask you this. This strikes me as a very peculiar case in lots of different respects. There were three people involved in this crime, and there was a videotape of the crime occurring. Yes. One of the victims was beaten with a gun. Yes. Did either of the victims from the star identify this defendant, did Marco Pulo, on a lineup? No. The third suspect, who is what police in the state say is DeMarco Pulo, had a bandana over his face, and so no one identified him. They did identify Suspect 1, and Suspect 2 was identified by someone else. So Suspect 1 was Davis? Suspect 1 was Michael Pulo. Michael Pulo. And Suspect 2 was this guy, Tawan Davis? Yes. And Suspect 3, your theory is, was this defendant, but no one ever identified him, because he had a bandana? Well, whoever it was, no one ever identified him. There was a question, as some police officers had said that they might have thought it resembled someone named Alfonso Davis. But the victims of the crime never identified him either in a lineup or from the videotape? That's correct. So the key bit of evidence is when, what is her name, Grace? Amber Grace. Amber Grace picks him up shortly after the crime and links the three of them together. That's correct. She was brought in on unrelated charges, and police started questioning her on this. And so her statements were what provided the foundation to police, were what provided the foundation for the entire investigation, really. She provided the link that they were missing. There wasn't much at all that would have connected our client to the crime. So when the police officer called, who is the officer who testified in this case? Poynter. Poynter testified? And when Poynter testified, this is before Amber Grace testified, and Poynter was asked on direct examination by the state to testify as to the statements Amber Grace made? Yes. And there was no objection to any of this? There wasn't. How does that help? I'm not sure. That struck me as peculiar as well. This is supposedly an experienced defense attorney? Mm-hmm. Okay. So then Amber Grace is called to testify. And we know from the victim that one of the women at the store was beaten with a gun. And according to Amber Grace's testimony, she says on direct examination by the prosecutor when she's testifying as a hostile witness about her earlier statement, did she tell Officer Williams that she picked up the three men at the paint store? And did she say, did she hear Davis say, quote, I hit that bitch in the head with a gun and I don't give a fuck? Mm-hmm. That's what she testified to? That's what she said in her interviews. Why isn't that the most damning evidence in this case to link the Marco pool with this crime? Well, she did say that her sister worked at Pisa's, and so that is how she knew all of that information. Well, if that testimony is believed, if it's believed that she picks up these three guys shortly after the crime occurs, and these three guys say, one of these said, I hit that bitch in the head, don't give a fuck, with a gun, that would certainly provide the link that these are the three guys who committed the Pisa armed robbery, wouldn't it? And Amber does hurt DeMarco. Her interviews that she gave police, it does hurt him. But that is why defense counsel should have had a thorough cross-examination of her. And this court has questioned in previous – Well, in fact, I mean, this whole thing is so bizarre. Had she not admitted, she's asked about the, did you tell Officer Williams this? And she says, yes, but it was a lie. If she said, no, I didn't, none of this would have been admissible. That's true. How is it that, what's the prosecutor thinking, what's the defense attorney thinking? I mean, how does this happen? I'm not sure what the defense attorney was thinking. It would have been best, perhaps, for the defense attorney, since he was representing both of them, to suggest that she not testify, then none of this gets in. Well, as a matter of fact, what's interesting is, and this is another problem in this case, it seems clear to me the state could have charged her with this very crime as an accomplice. That's true. Especially when her, I was panning story turned out to be bogus. She's the pickup driver. Yeah. So if she wanted, if she's called and testified and says, I take the fifth, I think if I'm the trial judge I'd have to respect that. But aside from that, the prosecutor just asks her questions as a hostile witness and all this comes out and everyone's just watching? Yes, there were no objections. And what I can only presume is that somehow defense counsel thought that her new story helped DeMarco. But as we know, Which story helped him? The story she told at trial. But then they got in all the other interviews, the phone calls, this was all really damaging to DeMarco and beneficial to the state. Does the record show whether or not the state had any reason, who was the prosecutor at this point, do you recall? It wasn't Mr. Milheiser, was it? It was. I thought he was involved later. He was the trial lawyer? Yeah. Does it show whether or not he had any basis to believe that she would acknowledge from the witness stand under oath that she had made these statements? Can you repeat the question? Yes. He calls her as a hostile witness so he can believe she's hostile, she's not cooperative. But did he have any reason to believe she was going to acknowledge under oath making these statements? Her interviews were recorded, weren't they? Her interviews were recorded. There was some mention prior to calling her the parties were discussing what they were going to do about the state said they were going to call her as a hostile witness because they didn't think she was going to cooperate. I don't know that you could really know either way because it's clear that DeMarco and Amber had a volatile relationship. It's possible they could have been going on bad terms that day and she might have stuck with her statements that she told police originally. So this is why a waiver should have been obtained prior to trial in the first place. Who recorded the interview of Graves? The police. I think it's video. There's video and transcripts as well. And in this case, DeMarco's trial attorney entered his appearance for Amber on July 15, 2013 and DeMarco's trial began on the 29th. After they entered their appearance for Amber, she received multiple continuances and four months after DeMarco was sentenced, two of her charges were dropped and they allowed her to plead guilty to a reduced misdemeanor charge. Her jail time was stayed and she received probation. She also wasn't charged as we've discussed as the getaway driver in this case. Based on these facts, it at least looks like Amber benefited from her testimony or her cooperation with police and this implication is one of the very things that the per se rule was designed to protect against. The state has argued that because Amber was a hostile witness, she was not really a defense witness or a prosecution witness for purposes of the per se rule. This court in People v. Murphy and the Supreme Court in People v. Thomas considered similar situations where a witness later on the stand changed their story or said they did not make those statements to police and in each of those cases a per se conflict was still found. And in this case, many of the factors that were in play in the consideration the court took in People v. Thomas in deciding that it was a state's witness were at issue. Amber changed her story at trial and got the previous interviews in. They got in the phone calls between DeMarco and Amber which were very damaging to DeMarco's case. Her taped interview statements were very lengthy and seriously implicated DeMarco. She also was always listed as a state's witness and the state chose to call her. This all makes her a state's witness. It is possible to waive a per se conflict of interest. And here, as we've discussed, there was a signed waiver. But a signed waiver is not enough. The waiver here wasn't filed prior to trial. It's clear that the court was unaware of the conflict in any respect until well after the trial. And the waiver in this case was undated. There was also no admonishment by the court of the real implication that DeMarco, or the real consequences DeMarco faced in waiving his right to a conflict-free counsel. The waiver in this case, or the admonishment, should have been done in open court. They should have explained that counsel had loyalties to both DeMarco and Amber and may find himself needing to choose between those loyalties. There are so many subtleties and nuances to dual representation like this that it's not clear that DeMarco was ever informed of this. Your Honors, DeMarco's trial counsel contemporaneously represented both DeMarco and a prosecution witness. What is affirmatively shown on this record is that no waiver was filed prior to trial, the court was completely unaware of the conflict during the trial, and DeMarco was never admonished as to the real detriment that he faced by waiving his right to conflict-free counsel. If there are no further questions, based on these facts, DeMarco will respectfully request that his conviction be reversed and the case remanded for a new trial. Thank you. Thanks, Ms. Weston. You'll have more time on rebuttal. Ms. Weickhoff. Thank you, Your Honor. May it please the court and counsel. As Justice Steigman just noted, this is a bizarre case. In a perfect world, this wouldn't have happened exactly as it did. However, that does not mean that reversible error occurred in this case. The defendant strenuously argues that a per se conflict existed, and thus defendant needs a new trial. We disagree for two very important reasons. First, Amber Graves was not a prosecution witness within the meaning of the per se conflict rule. Second, if Your Honors are not persuaded by that argument, there was a waiver in this case. First, Amber Graves was not a prosecution witness within the meaning of the rule. The policy of the per se conflict rule is to ensure that defense counsel strenuously cross-examines a witness before him. Defense counsel here argues that Mr. Foltz, defense counsel for DeMarco Poole, did not strenuously cross-examine Amber Graves. We admit that that's true. He did not strenuously cross-examine her. Because everything she said was wholly beneficial to the defendant. Amber Graves, if to be believed in her trial testimony, essentially took the defendant out of this crime altogether. She said, we went to the casino, we went to get gas, we went back to my house, and we were at my house all night. Everything she said was exactly what the defendant would want her to say. It took him out of this crime altogether. But by calling her, even as a hostile witness, didn't that enable the state to be able to get in her prior recorded statements that she acknowledged giving as substantive evidence against the defendant? Your Honor, the recorded statements, there's two pieces of evidence that came in at the time of her testimony. First, the jail recorded statements of her telephone conversations with the defendant. And second, her police interview, which she gave when she was actually brought into custody on unrelated charges. And they asked her then about this incident with the defendant at that time, which was, excuse me, recorded. First, I'd like to address the jail... Did they play that for the jury? I don't think they played it, did they? The recorded... Her interview. Was that actually played? Yes. Oh. So, first, I'd like to discuss the jail recorded conversations between the defendant and Amber Graves. Those recorded interviews would have come in anyway, the recorded conversations, I apologize. He's trying to intimidate her from testifying. Yes, he was, and the things that he said were certainly far from the latter. Okay, let's put that aside. Let's focus on the interview. Okay. In terms of the interview, the things that she said, they would have come in anyway, that interview. She was a critical party to this whole transaction. She went to the police station, she talked with the police. The things that she said did implicate the defendant in this crime. It's true, in her police recorded statements, that she said, you know, they got in the car... Let's say, they probably would have come in. The issue is, she's got the same lawyer that the defendant has. Correct. That's the issue. Correct, yes. The state stands on its brief in arguing that she was not a prosecution witness within the meaning of the per se conflict rule. Her testimony at trial benefited the defendant. The policy of this per se conflict rule is to ensure that defense counsel strenuously cross-examines a witness before him. There was no reason for Mr. Foltz to strenuously cross-examine her. Well, let me ask this, counsel, and again, this isn't... You know, in your case, you're doing the best you can to try to explain what's happened here and to put a best light on it, but what's troubling is this. Before Ms. Grace testified, during the state's case in chief, there was no testimony before the jury about the fact that she picked up the three men in the paint store parking lot and the remarks of Davis that she testified to, which strikes me as the strongest bit of evidence linking these folks in a timely fashion together as the three armed robbers at the paint store. Yes. Now, prior to that moment, that testimony wasn't before the jury. Now, she may be testifying as a hostile witness and she may be unwilling and all the rest of this, but, you know, using the metaphor of the football at the 50-yard line, it seems to me that when she was done testifying, from the state's point of view, the ball's been advanced towards the goal of convicting this defendant based upon the testimony that the jury has now heard of Ms. Graves talking about the conversation in the car. Your Honor, while I can see how defense counsel has portrayed it as that way, as her being a very strong link, linking the defendant to this crime, there was significant other evidence against the defendant in this case. Oh, well, to be clear, I'm not for the moment dealing with the question of was there sufficient evidence for conviction. But for you to be arguing to this court that the normal rules on per se conflict don't apply because, after all, she was really a defense witness, even though called by the state because of her hostility, to make that argument, you have to demonstrate that nothing she said helped the state. It seems to me not only did it help the state, it was the key evidence linking this defendant to this crime. Your Honor, I would respectfully disagree with that thought. The defendant's brother was also involved in this case, and his arrest is really what prompted the police inquiry into the defendant. The defendant, when the police came to his home, you know, searching for more evidence related to his brother, they noticed that Mr. Poole was very, he was on edge, he was asking a lot of weird questions. They did notice that the clothes that were around his apartment were similar to the clothes seen in the police, or the surveillance video. The defendant was earlier in the day at a casino with Amber Graves, which she was also caught on surveillance video in the casino wearing similar clothes, and I believe a Livestrong bracelet, the yellow band that people used to wear, that was also another link between him from the casino to the Pisa's candy store. Thus, the things that Amber Graves said during her recorded interview with police officers, that wasn't what brought police to DeMarco Poole in the first place. Certainly the things that she said in that interview were damaging to him, but the things that she said at trial when Mr. Foltz would have been cross-examining her were not detrimental to DeMarco Poole whatsoever. In fact, if she was to be believed, he wasn't there at all. However, if your honors aren't persuaded by the argument that she was not a prosecution witness, I would like to talk about the waiver in this case. There was a waiver on file, it's on the record in this case. As defense counsel notes, this waiver is not dated. However, there is evidence throughout the record which suggests that this waiver was obtained pre-trial. More significantly, Ms. Wykoff, and this is where I read your brief, I tried to look into this, I never heard, and I tried to look for cases that would support the notion, that the waiver of a per se conflict could be done without the court's involvement and approval. In other words, we have, if you're going to waive counsel for trial, we have Rule 401. If you're going to waive a jury trial, we don't have a rule, but you're expected, had this been a written jury trial sitting in the defense counsel's file, that wouldn't have been adequate. The defendant would have to appear in open court, and with his, at a minimum, with standing next to his counsel says, my client is going to waive a jury trial, do it. But the court has to hear it, and as a judge who used to do this, I turned to the defense attorney, he said, you understand what a jury trial is and what you're giving to establish, it's a knowing and intentional waiver of a known right. I've never seen, and it strikes me as very odd, to let a defendant waive what amounts to a constitutional right, right against the per se conflict of interest by his counsel, without the court's involvement, by filling out something in apparently his lawyer's office, and then having his lawyer, after the fact, after the trial, say, oh, by the way, judge, look at this, he waived any of this conflict. Right, your honor. One more peculiarity of this case. Yes, no, it is. This isn't the way this should have gone, certainly. If this had gone perfectly, then we wouldn't be here arguing about it today. However, the way that this August 20th hearing seemed to proceed, at least based on the record itself, none of us were there watching this unfold, so we can't say with 100% certainty. Dan Foltz said, your honor, I have a waiver, I got a waiver, so I could simultaneously represent both DeMarco Poole and Amber Graves, at which point Mr. Milhiser did say, the state's attorney, he said, I didn't know about this, I haven't seen a waiver. Mr. Foltz says, oh, Mr. Milhiser, it's in your file. Now, we can't see, we have no video of what was happening on August 20th, but presumably then, Mr. Milhiser says, okay, well, here's the waiver, and then they don't really talk about it anymore at that hearing. This waiver issue is extremely important, and I can't stand here today and tell you, when this waiver was signed, what things were said to the defendant when he signed it. I don't think defense counsel can tell you that either. Let me make reference to the very first case, I think, where the Supreme Court of Illinois addressed this was in 1968, where the Supreme Court had before it an issue of whether or not there was a per se conflict of interest, because an attorney was representing, essentially like in this case, a defendant and a victim or witness that was a state's witness. And what happened in that case is there was a hearing in front of the court, and the court turned to the defendant and said, you understand that the people who are going to be testifying against you are also the clients of your lawyer, and said yes. Any question about that, make any difference to you? Is there any connection? No, sir. And the court accepted the waiver. The Supreme Court, in a situation rather more dramatic actually involving the court, which we don't have in this case, said this. It cannot be said, judging by this record, that the defendant was adequately informed of the significance of conflict of interest so far as his appointed attorney was concerned, and that he understood how conflict could affect, sometimes subtly, a client's representation. The difficulty in appropriately advising an accused of his rights almost directs that counsel, especially one appointed, be free from any such conflict, therefore this court must be returned to the circuit court for retrial. That's a rejection of a waiver that the court conducted because it wasn't good enough. And we don't even have the court involved here, we just have the self-serving statements of defense counsel. You're right, Your Honor, and I think that the main reason that we don't have the trial court involvement here, at least on this waiver issue, is because the trial court determined that there was no per se conflict at all in this August 20th hearing. Well, I think you're being too generous. I think this is a matter, frankly, I'm not sure whether this is something that we are duty-bound to report to the ARDC with regard to defense counsel. I never heard of such a thing as filling out the waiver, not revealing it to the court, because, for all the reasons you mentioned, it looks to me like this was known to defense counsel before trial, not calling it to the trial court's attention, and then conducting himself in this fashion. This strikes me as some serious ethical concerns that I think the ARDC should be addressing. Your Honor, I'm glad that you make that point, because that is a perfect segue into something else I want to discuss, the fact that this claim is much better raised on a petition for post-conviction, so that we can ask these questions. I don't know when the waiver was signed. Defense counsel doesn't know when the waiver was signed. We don't know what Mr. Foltz told the defendant. But even if we accepted that argument, we still were allowing the defense attorney to determine whether or not there was an effective waiver of his conflict. He never gave the court the chance to address that issue. So how do you ever correct that? I guess it's a question. Your Honor, I think that in order to understand what happened in this case, in order to understand what Mr. Mulheiser, Mr. Foltz, the defendant, Amber Graves, what they were thinking, this should go on post-conviction, and we should ask those questions. If the defendant can sign an affidavit that says, I didn't know, I didn't know what I was doing when I signed this waiver, or I signed this waiver post-trial, then we can delve into these questions that we quite frankly don't have the answers to right now. And I understand Your Honor's concerns that, you know, based on the cold record, it just doesn't quite seem right, and I agree with that. However, at this stage, I don't think that it's reversible error, because we don't have enough information. We need additional evidence from the defendant, from defense counsel, as to what transpired off the record, because we cannot stand here today and say that the defendant signed this before trial, they'd actually talked about it before with Mr. Mulheiser, with the assistant state's attorney on that case. We just don't know. For those reasons, we think this claim is much better raised on a petition for post-conviction, at which time we can further explore that argument. Because if indeed the defendant didn't know what he was signing, if he signed it post-trial, then he has an excellent claim in this case. Perhaps he is entitled to a new trial. But if we reverse this decision and send him back for a new trial, maybe he did sign the waiver after trial, and then we're reversing his conviction on something that was okay in the first place. Your Honor, it's just... You said that the court found that there was not a per se conflict. Correct. But I don't recall that. This was during the August 20th hearing. The term per se conflict never came up in this August 20th hearing. The trial court determined that Amber Graves was a defense witness, despite the fact that she was called by the state. Thus, the per se conflict rule encompasses a prosecution witness, not a defense witness. But Mr. Fultz was... It was undisputed he was representing both Amber Graves and DeMarco Poole at the same time. Correct. Yes, Your Honor. He was representing them both at the same time. However, we have this waiver, which we need further evidence about. But we still stand by our argument that Amber Graves was not a prosecution witness. Defense counsel did argue in their reply brief that we don't necessarily have authority to support that contention. And that's true. This hasn't been addressed in case law before. I think that it's important to draw a distinction between a prosecution witness and any witness called by the state. Any witness called by the state is very broad. Prosecution witness suggests the witness that is aiding the prosecution, which we don't have here. However, if Your Honors aren't persuaded by that, there was a waiver. There's sufficient evidence on the record that shows the waiver was signed pre-trial. The language of the waiver itself says Amber Graves could be called as a witness in defendant's case. The waiver doesn't say she was called. Well, let's put it this way. If the state hadn't called her and the defense didn't call her, then her prior statements to the police don't come in, right? Defense counsel said he was going to call her. At the August 20th hearing, it came up, and defense counsel said, and Mr. Milhiser agreed, if I didn't call her, he was going to call her. Dan Foltz said, yeah, I would have called her to the witness stand. To what end, I guess? Why would you call her? Well, I'm certain that Dan Foltz wanted to call her because he had some idea that she was going to testify in favor of his client. The issue with this hostile witness language here, generally, as Your Honors know, when you have a hostile witness as a prosecutor, you call a witness, you start asking them questions, maybe they're responding, I don't know, I don't remember, they're just not cooperating with you at all, at which point you then ask the court, Your Honor, I would like to treat this witness as a hostile witness, and the court would say, yeah, okay, or they would say, no, you need to continue conducting your direct examination as you would otherwise. That's not what happened here. Amber Graves hadn't said a word. Presumably the trial court, before she even got on the stand, had some sort of understanding that she wasn't going to cooperate with the state because why else would they allow her to be treated as a hostile witness before she testified at all? I think Foltz said he didn't have any objection. To her being treated as a hostile witness? That's true, but the trial court still allowed her to be treated as a hostile witness on direct examination by the prosecutor. Mr. Milheiser and his then-assistant, Ms. Velde, knew she wasn't going to cooperate with them before she said a single word. So perhaps using the terminology, as they did in the trial court, of hostile witness wasn't necessarily the most appropriate thing, but as I've just told Your Honors, there's not a lot of precedent on this matter, insofar as a prosecution witness versus a witness testifying for the prosecution. And if Your Honors still believe she was indeed a prosecution witness, the things that she said or the things that happened did damage the defendant. They heard him at his trial, despite the fact that her testimony essentially took the defendant out of this crime altogether. The state still requests some guidance on this issue. Complex issues come up a lot in our office. It would be helpful to have some sort of understanding if prosecution witness means any witness called by the state or not. Sometimes prosecutors have to call a witness that they know is not going to be helpful to them in their case. It's a prosecutor's duty to ensure that justice is done, and sometimes that includes calling someone who might not be that helpful to your case. We think that's what happened here. And for those reasons, we believe that Amber Grace was not a prosecution witness within the meaning of the rule. Your Honor, furthermore, a defendant did waive his right to conflict-free counsel, and although there are issues with that waiver, those issues are better resolved on a petition for post-conviction relief. Therefore, we ask that Your Honor's affirm defendant's conviction and allow him the opportunity to pursue this issue on a petition for post-conviction. Thank you. Thank you, counsel. Ms. Weston, are you ready for rebuttal? The state has mentioned that there's not a lot about whether a witness really benefits the state or the defense. People v. Murphy and People v. Thomas both considered similar situations and still found the witness to be a prosecution witness. And that argument is sort of besides the point because the waiver needs to be done before trial. You can't know what the testimony is going to be unless you have a stipulation, I guess. So you don't technically know what that person is going to be testifying to until it happens. You have to waive the conflict before that happens. So that would be our answer to why there wouldn't be a lot on that. Also, to the argument that this would be better brought on post-conviction, we respectfully disagree because what is affirmatively shown on this record is that nothing was done prior to trial. While we might not know what was said to DeMarco when he allegedly signed this waiver prior to trial, that's the point because there needed to be something done in the trial court where it's on the record. And you know that that defendant has been admonished and understands his right to conflict-free counsel and what he's giving up by waiving it. And the state has argued that everything Amber said was beneficial to DeMarco's case. Except this ignores the fact that the state then got in all the prior interviews and the phone calls and everything that helped their case. Well, the phone calls would be admissible anyway. If she didn't testify, I don't... Weren't those recorded? They were recorded, yes. But there was some objection to those phone calls. And they did end up letting them in because it was relevant because she then changed her story at trial. I'm a little confused. Maybe I should have asked Ms. Wyckoff this question. How does the recording of her interview get played when she admitted that she made those statements? I'm not sure. They did play... They played it for the jury. There was no objection to that. It was... The record shows it was played. I believe so. Just in case the jury might have forgotten that she said, oh yeah, that's what they said. I guess. The defense should have... The defense counsel here should have impeached Amber with her prior impeachable offense because it would have called into question everything that she said. Not just what she said at trial, but even what she told police as well. There was no... His cross-examination into her just didn't touch on anything like her motivations for speaking with police, her motivations for testifying, anything like that. Did you mention in your brief that the interview with Amber Rays was recorded? I don't know if I mentioned... I think I mentioned it in the brief, but... I'm looking. I missed it if you did. Or mentioned that the recording was played to the jury? I don't know if that's exactly in there. Go ahead. Okay. In this case, the court was not aware prior to trial of the dual representation. That is affirmatively shown on the record. Case law shows that the defense counsel has a duty to notify the court of this conflict or potential conflict. DeMarco and Amber's... DeMarco's representation... No matter how subtle of waiving his right to conflict-free counsel. If there are no further questions, DeMarco respectfully requests this conviction be reversed and the case remanded for a new trial. Thank you, counsel. We'll take this matter under advisement to stand in recess.